UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BRANCE SONNIER, ET AL. | CIVIL ACTION NO. 6:16-cv-00621 |
| VERSUS | JUDGE DRELL |
| LOUIS M. ACKAL, ET AL. | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

Pending before this Court is the motion for summary judgment, which was filed by the defendants, Iberia Parish Sheriff Louis M. Ackal and Sheriff's Deputy Lucas Plauche (Rec. Doc. 23). The motion is opposed. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. For the following reasons, it is recommended that the motion be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

This lawsuit arose out of an incident in which a dog was killed by an Iberia Parish sheriff's deputy. In their complaint, the plaintiffs, Teddy Sonnier and his son Brance Sonnier, alleged that a neighbor called 911 on the morning of August 28, 2015 to report a loose dog at the plaintiffs' residence. Corporal Lucas Plauche, a deputy with the Iberia Parish Sheriff's Office, was dispatched to the scene. When he arrived at the plaintiffs' address, nobody was home and the plaintiffs' dog, Tank, was

in the plaintiffs' yard. Tank was a two-and-a-half-year-old registered Presa Canario. The plaintiffs alleged that, in addition to being a family pet, Tank was also the product of champion bloodlines and used for breeding.

The plaintiffs alleged that, after arriving at the scene, Corporal Plauche called Deputy Chris Richard, Sergeant Gregory Pete, and Corporal Brad LeBlanc for assistance, all of whom also arrived on the scene. Animal Warden Wesley Lanceslin also arrived on the scene, equipped with a catch pole. Video from Corporal Plauche's body camera shows Corporal Plauche talking with another deputy, and it shows Tank running about and barking, all while remaining in the plaintiffs' yard. On the video, Tank never growls, snarls, or makes any aggressive movements toward the officers. After approximately twenty minutes, the video was shut off. It is undisputed that, after he had been on the scene for approximately an hour, and after the body camera was turned off, Corporal Plauche discharged his service weapon and shot Tank in the left eye, killing him.

The plaintiffs sued Iberia Parish Sheriff Louis M. Ackal, the Iberia Parish Sheriff's Office,[1] and Corporal Lucas Plauche, asserting claims under 42 U.S.C. § 1983, and alleging that Tank's killing was an illegal seizure that violated their rights guaranteed by the Fourth and Fourteenth Amendments of the United States

---

[1] The claims against the Sheriff's office were voluntarily dismissed. (Rec. Doc. 13.)

Constitution. The plaintiffs also asserted Louisiana state law claims for conversion, respondeat superior, negligent training and supervision, and intentional infliction of emotional distress. The plaintiffs also seek the recovery of attorneys' fees under 42 U.S.C. § 1988.

## CONTENTIONS OF THE PARTIES

In their motion for summary judgment, the defendants argued that there are two reasons why the plaintiffs' claims should be dismissed in their entirety. First, they argued that the plaintiffs were not Tank's owners and, consequently, cannot assert a Fourth Amendment claim for wrongful seizure of their property. Second, they argued that the plaintiffs' claims are procedural due process claims that cannot be remedied through the operation of Section 1983 because Louisiana provides an adequate post-deprivation remedy for a loss of property through governmental action. Additionally, the defendants argued that, because the plaintiffs were not Tank's owners, they cannot validly assert a Louisiana state-law conversion claim. Finally, the defendants argued that, once the plaintiffs' federal-law claims are dismissed, the court should decline to exercise supplemental jurisdiction over the plaintiffs' remaining state-law claims. The defendants' motion for summary judgment does not address the issue of qualified immunity.

In response, the plaintiffs argued that they were Tank's owners at all material times and therefore validly asserted a Fourth Amendment claim and a Louisiana state-law conversion claim. The plaintiffs responded to the defendants' due process argument with only a single sentence, maintaining that their due process claims have merit. The plaintiffs then argued that there is a genuine issue of material fact concerning whether the shooting of Tank was unreasonable and, for that reason, violated their Fourth Amendment protection against unlawful seizure and precludes the court from finding that the defendants are entitled to qualified immunity.

## LAW AND ANALYSIS

### A.  THE STANDARD FOR RESOLVING A MOTION FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[2] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[3]

---

[2]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[3]  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

The party seeking summary judgment has the initial responsibility for informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[4] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[5] All facts and inferences are construed in the light most favorable to the nonmoving party.[6]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[7] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[8]

---

[4] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[5] *Washburn v. Harvey*, 504 F.3d at 508.

[6] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[7] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[8] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**B.     THE STANDARD FOR EVALUATING A SECTION 1983 CLAIM**

The complaint states that the plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 as well as under Louisiana law. Section 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another person's Constitutional rights. Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[9] To state a section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[10]

**C.     THE STANDARD FOR EVALUATING A FOURTH AMENDMENT CLAIM**

"The Fourth Amendment, which applies to the states through the Fourteenth Amendment, bars unreasonable governmental searches and seizures."[11] "A 'seizure' of property occurs when there is some meaningful interference with an individual's

---

[9] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

[10] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

[11] *Shaboon v. Duncan*, 252 F.3d 722, 733 (5th Cir. 2001). See, also, *Borsarge v. Ms Bureau of Narcotics*, 796 F.3d 435 (5th Cir. 2015); *Stone v. Powell*, 428 U.S. 465, 483 (1976).

possessory interests in that property."[12] The Fifth Circuit has held that the killing of a dog can constitute a seizure within the meaning of the Fourth Amendment.[13] The Fourth Amendment requires that a seizure be objectively reasonable.[14] Therefore, after a determination has been made that there was a seizure, "[w]hether the Amendment was in fact violated. . . requires determining if the seizure was reasonable."[15] In determining whether the seizure – in this case, the killing of the dog – was objectively reasonable, the court must examine the totality of the circumstances, balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[16] This question must be analyzed from the perspective a reasonable officer on the scene and not with 20/20 hindsight; the analysis must also allow for "the fact that police officers are often forced to make split-second judgments – in

---

[12] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

[13] *Jones v. Lopez*, No. 16-20290, 2017 WL 2126353, at *2 (5th Cir. May 15, 2017); *Grant v. City of Houston*, 625 Fed. App'x 670, 674 (5th Cir.2015); *Stephenson v. McClelland*, 632 Fed. App'x 177, 184 (5th Cir. 2015).

[14] *Stephenson v. McClelland*, 632 Fed. App'x 177, 184 (5th Cir. 2015).

[15] *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61-62 (1992).

[16] *Stephenson v. McClelland*, 632 Fed. App'x at 184 (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."[17]

## C. THE PLAINTIFFS OWNED TANK

The defendants contend that a threshold question must be resolved before the issue of qualified immunity or the merits of the plaintiffs' claims can be addressed. They argued that, in order to assert a claim for the unconstitutional seizure of his property, a person must first establish that the property was, in fact, his. They further argued that the plaintiffs are not entitled to assert the claims set forth in their complaint because neither Teddy Sonnier nor Brance Sonnier owned Tank. The defendants premised this argument on the contention that Tank's pedigree and registration were in the name of Chase Sonnier (Teddy's son and Brance's brother) and not in either Teddy Sonnier's or Brance Sonnier's name.

The defendants did not submit any documentary evidence in support of their argument that Tank was owned by Chase Sonnier rather than by Teddy or Brance Sonnier, nor did they cite any statutory or jurisprudential authority for the proposition that the registration of a dog with a club or organization establishes the dog's ownership. This Court is unaware of any governmental agency that registers the

---

[17] *Stephenson v. McClelland*, 632 Fed. App'x at 184 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989).

owners of dogs or other domestic animals. The plaintiffs submitted a "Permanent Registration Certificate" issued by the United Kennel Club Registering Office, which states that the "sole signatory" and "registrant on record" for the dog known as Kingdom Kennels Tank was Chase Sonnier. (Rec. Doc. 25-9 at 1-3). This document was not accompanied by an affidavit and there is no basis on which to conclude that it constitutes valid summary-judgment-style evidence. Still, perhaps this is the documentation that the defendants were referring to when they argued that Tank was registered in Chase Sonnier's name. But that document does not indicate that Chase Sonnier was the dog's owner.

Furthermore, Teddy Sonnier testified at his deposition that, because his work schedule requires him to be out of the country for long periods of time, it is not unusual for his sons Chase and Brance to sign registration papers for dogs that he owns. (Rec. Doc. 23-3 at 2). He admitted that Chase signed the registration papers for Tank (Rec. Doc. 23-3 at 3) but stated that he, Teddy, was Tank's owner (Rec. Doc. 23-3 at 3). More particularly, he explained that he acquired ownership of Tank after breeding Tank's father and obtaining the right to receive the first male pick of the litter. (Rec. Doc. 25-3 at 4-5). He also stated that he paid for everything for Tank and his other dogs and that the kennel belongs to him; however, he also stated that his sons take care of his dogs for him. (Rec. Doc. 25-3 at 8). Teddy Sonnier further

testified that his son Brance was also an owner of Tank because Brance "raised Tank from a baby. . . in Brance's home." (Rec. Doc. 23-3 at 3-4). Brance Sonnier confirmed this testimony, stating that he considered Tank to be a family dog because he "had him since he was born," "raised him in the house with my kids," and "raised him in my house." (Rec. Doc. 25-4 at 10).

Under Louisiana law, a dog is a corporeal movable.[18] Corporeal movables are things, whether animate or inanimate, that normally move or can be moved from one place to another.[19] The possessor of a corporeal movable is presumed to be its owner.[20] Because a dog is classified as a corporeal movable, the person in possession of a dog is presumed to be its owner.[21] In a Louisiana case in which it was argued that a dog's ownership was apparent from the face of registration documents, Louisiana' Second Circuit Court of Appeal stated: "this court is not aware of any publically or privately sponsored registry where dog owners can register their dogs

---

[18] *St. Julien v. Landry*, 12-100 (La. App. 3 Cir. 6/20/12), 94 So.3d 976, 982; *Smith v. University Animal Clinic, Inc.*, 09–745 (La. App. 3 Cir. 02/10/10), 30 So.3d 1154, 1156, *writ denied*, 2010-C-0566 (La. 05/28/10), 36 So.3d 247; *Holland v. Teague*, 43,496 (La. App. 2 Cir. 09/17/08), 996 So.2d 325, 329); *State v. McCormick*, 98-0718 (La. App. 4 Cir. 6/9/99), 737 So.2d 926, 931, *writ denied*, 1999-K-2009 (La. 01/14/00), 753 So.2d 207.

[19] Louisiana Civil Code Article 471.

[20] Louisiana Civil Code Article 530.

[21] *Terral v. Louisiana Farm Bureau Cas. Ins. Co.*, 39,360 (La. App. 2 Cir. 01/26/05), 892 So.2d 732, 736; *State v. McCormick*, 737 So.2d 926, 931 (La. App. 4 Cir.,1999), *writ denied*, 1999-K-2009 (La. 01/14/00), 753 So.2d 207.

for the purpose of establishing ownership."[22] The court then went on to presume that the person possessing the dog at issue was its owner, stating that "[a]s a corporeal movable, ownership of the black dog can be presumed from possession."[23]

In this case, the evidence establishes that Teddy Sonnier acquired the ownership of Tank when he picked him from a litter sired by Tank's father in lieu of the breeding fee. (Rec. Doc. 32 at 3-4). The evidence further establishes that, due to his work taking him out of the country (Rec. Doc. 32 at 1-2), Teddy Sonnier voluntarily relinquished temporary possession of Tank to his son Brance, and Tank lived with Brance Sonnier and his family (Rec. Doc. 25-4 at 10; Rec. Doc. 32 at 7). Louisiana law permits two or more persons to share ownership of the same thing.[24]

This Court finds that the defendants failed to prove that Chase Sonnier was Tank's owner. To the contrary, this Court finds that Tank was owned by both Teddy Sonnier and Brance Sonnier. Accordingly, they are entitled to bring the claims asserted in this lawsuit. To the extent the defendants argued that they were entitled to summary judgment in their favor because the plaintiffs lacked standing to assert their claims, it is recommended that the motion be denied.

---

[22] *Terral v. Louisiana Farm Bureau Cas. Ins. Co.*, 892 So.2d at 737.

[23] *Terral v. Louisiana Farm Bureau Cas. Ins. Co.*, 892 So.2d at 738.

[24] Louisiana Civil Code Article 480.

**D. THE PLAINTIFFS DUE PROCESS CLAIMS**

The defendants argued that the plaintiffs' complaint should be dismissed because the claims that the plaintiffs asserted are due process claims, and such claims are not cognizable when state law provides an adequate post-deprivation remedy. They then suggested that Louisiana tort law recognizes a claim for conversion,[25] or the unlawful taking of a person's property, which affords such a post-deprivation remedy. The plaintiffs did not address this argument, other than to state, with no supporting evidence or authority, that "their Federal Due Process claims are with merit." (Rec. Doc. 25-1 at 21).

This Court finds, as a preliminary matter, that the plaintiffs did not assert due process claims in their complaint. The plaintiffs' complaint alleged that "[t]his is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' Fourth and Fourteenth Amendment rights as secured by the United States Constitution. . . ." (Rec. Doc. 1 at 3). It also alleged that Tank's death violated the plaintiffs' "rights guaranteed by the Fourth and Fourteenth Amendments. . . ." (Rec. Doc. 1 at 8). However, the words "due process" are not in the complaint. Accordingly, this Court interprets the references to the Fourteenth

---

[25] Under Louisiana law, the tort of conversion is committed when a movable is destroyed. *Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 98–0343 (La.12/01/98), 721 So.2d 853, 857. Therefore, an action in tort is available for the killing of a dog.

Amendment set forth in the complaint as merely referencing the fact that the Fourth Amendment's protections against wrongful search and seizure were made applicable to the actions of state actors through the operation of the Fourteenth Amendment, and this Court concludes that the plaintiffs did not assert due process claims in their complaint.

But the plaintiffs included a sentence in their opposition memorandum stating that their due process claims have merit. (Rec. Doc. 25-1 at 21). Therefore, to the extent that the plaintiffs might contend that they did assert due process claims, the merits of the defendants' argument – which was not opposed by the plaintiffs – will be addressed.

Due process may be substantive or procedural. When a constitutional amendment provides an explicit textual source of protection against certain government misconduct, that amendment is the guide for analysis of the claim rather than the generalized notion of substantive due process.[26] Therefore, when a law enforcement officer's killing of a pet dog constitutes the destruction of property and constitutes a seizure under the Fourth Amendment, the claim should be analyzed as a Fourth Amendment claim rather than as a substantive due process claim. "Because

---

[26] *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989).

the substantive component of the Due Process Clause does not provide Plaintiffs with any additional relief than that provided by their Fourth Amendment claim, any possible substantive due process claim should be dismissed."[27] Therefore, this Court recommends that, to the extent the plaintiffs might have asserted a substantive due process claim under the Fourteenth Amendment, the defendants' motion for summary judgment should be granted, and the substantive due process claim should be dismissed.

The argument posited by the defendants concerning the adequacy of state-law post-deprivation remedies applies only to procedural due process claims. Ordinarily, under the due process clause, the state may not take property from an individual without providing pre-deprivation notice and a hearing.[28] However, "[u]nder the *Parratt/Hudson* doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if

---

[27] *Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 WL 3381047, at *8-9 (W.D. Tex. Oct. 16, 2009), citing *Folkers v. City of Waterloo*, 582 F.Supp.2d 1141, 1155 (N.D.Iowa 2008) (holding that Fourth Amendment rather than substantive due process provision of the Fourteenth Amendment was proper means for dog owner to bring claim against offer's seizure of his dog); *Dziekan v. Gaynor*, 376 F.Supp.2d 267, 270 (D. Conn.2005) (where officer killed pet dog, substantive due process claim was not warranted since Fourth Amendment provided explicit protection against unreasonable seizure).

[28] See *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

the state provides an adequate post-deprivation remedy."[29] This doctrine rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies for such conduct are not feasible.[30] In such a case, the provision of adequate state law post-deprivation remedies provides all of the due process that is required.[31]

In this case, however, the plaintiffs did not allege that Corporal Plauche's actions were "random and unauthorized." Instead, they alleged that his actions were the result of policies, practices, or customs and usages implemented by Iberia Parish Sheriff Louis M. Ackal and the sheriff's "custom of tolerating employee-responders unreasonably using deadly force against loose dogs and failure to train and/or equip CORPORAL PLAUCHE to properly handle dog/animal encounters without the use of lethal force." (Rec. Doc. 1 at 7). The Fifth Circuit has explained that the *Parratt/Hudson* doctrine does not apply when a law enforcement office is operating

---

[29] *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995). See *Hudson v. Palmer*, 468 U.S. 517, 529-37 (1984); *Parratt v. Taylor*, 451 U.S. 527, 535-45 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). See, also, *Copsey v. Swearingen*, 36 F.3d 1336, 1342 (5th Cir. 1994) ("When a plaintiff alleges that he has been deprived of property because of the random and unauthorized acts of government officials and seeks a post-deprivation remedy, there is no denial of due process if the state provides adequate post-deprivation remedies.")

[30] *Zinermon v. Burch*, 494 U.S. at 128-32.

[31] *Zinermon v. Burch*, 494 U.S. at 128-32.

pursuant to a local custom or procedure.[32]  Instead, when "employees are acting in accord with customary procedures, the 'random and unauthorized' element required for the application of the *Parratt/Hudson* doctrine is simply not met."[33]  In other words, allegations that a defendant was acting in a customary manner negates the "random and unauthorized conduct" element needed for application of the *Parratt/Hudson* doctrine.[34]  Therefore, this Court concludes that the *Parratt/Hudson* doctrine does not provide a basis for dismissing any procedural due process claims that the plaintiffs might have asserted in their complaint.

Although further proceedings may show that the Corporal Plauche's acts were "random and unauthorized," the plaintiffs' allegations must be accepted as true at this stage of the litigation, and those allegations preclude the application of the *Parratt/Hudson* doctrine to any procedural due process claim that the plaintiffs might have.  Accordingly, the defendants' motion for summary judgement with regard to the plaintiffs' procedural due process claim, if any, should be denied.

---

[32] *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

[33] *Brooks v. George County, Miss.*, 84 F.3d at 165.  See, also, *Smith v. Epps*, 326 Fed. App'x 764, 765 (5th Cir. 2009); *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).

[34] *Alexander v. Ieyoub*, 62 F.3d at 713.

### E. THE REASONABLENESS OF CORPORAL PLAUCHE'S ACTIONS IS NOT BEFORE THE COURT

Although the plaintiffs went to great lengths to argue in their opposition memorandum that it was not reasonable for Corporal Plauche to shoot and kill Tank, neither the issue of whether Corporal Plauche is entitled to qualified immunity nor the ultimate issue of whether Corporal Plauche's actions violated the Fourth Amendment were raised in the defendants' motion for summary judgment. Accordingly, the reasonableness of his actions is not an issue before the court at this time and must be reserved for another day.

### F. THE PLAINTIFF'S STATE-LAW CLAIMS

The defendants argued that the plaintiffs have no conversion claim under Louisiana state law because they were not Tank's owners. This Court's finding that Teddy and Brance Sonnier were Tank's owners renders the defendants' argument concerning the plaintiffs' conversion claim without merit.

The defendants argued that the plaintiffs' state-law claims should be dismissed upon the dismissal of their federal-law claims. But this Court's finding that the defendant's motion for summary judgment should be granted only with regard to the plaintiff's substantive due process claim renders the defendant's argument concerning the remainder of the plaintiff's state-law claims without merit.

Accordingly, this Court finds that there is no basis for granting the defendants' motion for summary judgment as it concerns the plaintiffs' state-law claims.

## CONCLUSION

For the foregoing reasons, this Court recommends that the defendants' motion for summary judgment be granted with regard to the plaintiffs' substantive due process claim (if any) and denied in all other respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 27th day of June 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE